THIS DISPOSITION
IS CITABLE
AS PRECEDENT OF
THE TTAB

Mailed: 30 MAR 2004
Paper No. 12
AD

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Planalytics, Inc.
_____

Serial No. 76322156
_____

Timothy D. Pecsenye of Blank Rome LLP for Planalytics, Inc.

Monique C. Miller, Trademark Examining Attorney, Law Office 108 (David Shallant, Managing Attorney).
_____

Before Seeherman, Quinn and Drost, Administrative Trademark Judges.

Opinion by Drost, Administrative Trademark Judge:

On October 5, 2001, Planalytics, Inc. (applicant) applied to register the mark GASBUYER in typed form on the Principal Register for services ultimately identified as "providing on-line risk management services in the field of pricing and purchasing decisions for natural gas" in International Class 36. Serial No. 76322156. While the application was originally based on a claim that applicant

had first used the mark anywhere and in commerce on June 1, 2000, in its Request for Reconsideration, applicant deleted that basis and amended the application to allege a bona fide intention to use the mark in commerce.

The examining attorney refused registration on the ground that the mark was merely descriptive under Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1), because the mark GASBUYER "describes the intended user of the services." Brief at 3. The examining attorney also refused to register the mark because applicant did not comply with the requirement for information under 37 CFR § 2.61(b). Applicant maintains that its mark is "a unique, coined term" that is suggestive but not descriptive. Applicant's Brief at 9.

After the examining attorney made the refusals final, applicant appealed to this Board.

We affirm on both grounds.

For a mark to be merely descriptive, it must immediately convey knowledge of the ingredients, qualities, or characteristics of the goods or services. In re Gyulay, 820 F.2d 1216, 3 USPQ2d 1009, 1009 (Fed. Cir. 1987); In re Quik-Print Copy Shops, Inc., 616 F.2d 523, 205 USPQ 505, 507 (CCPA 1980). Courts have long held that to be "merely descriptive," a term need only describe a single

2

significant quality or property of the goods. Gyulay, 3 USPQ2d at 1009; Meehanite Metal Corp. v. International Nickel Co., 262 F.2d 806, 120 USPQ 293, 294 (CCPA 1959). Descriptiveness of a mark is not considered in the abstract, but in relation to the particular goods or services for which registration is sought. In re Abcor Dev. Corp., 588 F.2d 811, 200 USPQ 215, 218 (CCPA 1978).

A mark can be descriptive if it describes the intended users of the goods or services. Shaw-Barton, Inc. v. John Baumgarth Co., 313 F.2d 167, 136 USPQ 116, 117 (7th Cir. 1963), cert. denied, 374 U.S. 831 (1963) ("We hold that the word "Homemakers," when applied to calendars of the type involved in this suit, is a noun descriptive of that class of individuals toward which the design and proposed use of the product is oriented") (footnote omitted); In re Hunter Publishing Co., 204 USPQ 957 (TTAB 1979) ("[I]t has been consistently held that a mark which describes the intended users of a particular product is merely descriptive of such goods." JOBBER AND WAREHOUSE EXECUTIVE for a trade magazine held descriptive of the class of purchasers); In re Camel Mfg. Co., 222 USPQ 1031, 1032 (TTAB 1984) ("[T]here is no doubt that the group described by the term 'MOUNTAIN CAMPER' is a category of purchaser to whom applicant specifically directs its camping equipment;"

3

MOUNTAIN CAMPER held descriptive of retail services in the field of selling camping equipment); Hunter Publishing Co. v. Caulfield Publishing, Ltd., 1 USPQ2d 1996, 1998 (TTAB 1986) (SYSTEMS USER is descriptive of the readers of a magazine directed at computer users).

To support her position that applicant's mark is merely descriptive, the examining attorney submitted numerous printouts from the Internet and from the LEXIS/NEXIS database. The evidence shows that the term "gas buyer" or "gas buyers" is a term applied to people who purchase natural gas supplies.

> It secured most of the permits needed to build the pipeline, and it has received preliminary orders from some Asian **gas buyers**.
> *Anchorage Daily News*, October 12, 2001.

> To ensure low costs on some of its contracts with natural gas-fired plants, the state is setting up shop as a **gas buyer** so it can supply those plants with inexpensive fuel.
> *San Francisco Chronicle*, August 12, 2001.

> Wholesale **gas buyers** thought they could wait and get better prices, but that did not happen, because demand was outstripping natural-gas supplies.
> *Philadelphia Inquirer*, July 28, 2001.

> [N]atural-**gas buyers** went into a frenzy, seeking to secure sufficient product.
> *Denver Westword*, October 4, 2001.

> Make-Up Gas
> In a **gas buyer's** contract there are often terms which allow the buyer to take make-up gas in contract periods after it has been paid but not taken.
> *www.financewise.com*.

> [T]he producer, who is a seller of natural gas, would seek downside protection by buying puts, a **gas buyer** would purchase calls.
> www.nymex.com.

In addition to this evidence that shows that "gas buyer" or "gas buyers" are terms commonly applied to purchasers of natural gas supplies, the examining attorney also included evidence that the term "gas buyer(s)" was used in conjunction with "risk management."

> [T]hese high hedge costs definitely discourage active **risk management** by natural **gas buyers**.
> *TheStreet.com*, October 17, 2001.

> That combination tends to increase volatility, and **gas buyers** need a plan to manage that volatility, Peak stressed.
> Regulators need to allow utilities to employ **risk management** techniques, financial hedging strategies and most importantly, recover losses incurred by financial hedging.
> *Inside F.E.R.C. Gas Market Report*, May 9, 2003.

> These include: encouraging verification of data from a company's back office or a senior official overseeing the trading operation or **risk management**… [W]hen industry-wide concerns were raised over California gas prices two years ago numerous regional **gas buyers** and sellers … subsequently answered the call…
> *Natural Gas Week*, April 24, 2003.

> [I]ncrease in demand by electric generators at a time when natural gas supply was short[,] forced natural **gas buyers** to bid high ... "The natural gas market has been workably competitive for some time, and it is that very volatility that has inspired the hedging and **risk management** tools that have been successful in the natural gas market."
> *Foster Electric Report*, October 23, 2002.

Applicant maintains that its term "is not GAS BUYERS, but rather GASBUYER, a unique, coined term that never appears in the evidence." Applicant's Brief at 9 (internal quotation marks omitted). In response, we note that both the singular and the plural terms, GAS BUYER and GAS BUYERS appear in the evidence of record.

Inasmuch as it clear that the terms "gas buyer" and "gas buyers" are commonly used to refer to the institutional purchasers of natural gas, we assume that when applicant argues that its mark is "a complete fabrication of the English language" (Applicant's Brief at 10), it is referring to the fact that applicant spells its term without a space between "gas" and "buyer." The absence of the space is not significant here. First, we cannot see how the absence of the space creates a different meaning or perception of the term. Whether the term appears as GAS BUYER or GASBUYER, it would be understood by the relevant consumers to have the same meaning, a buyer of natural gas. The Supreme Court has long ago recognized that slight variations in spelling do not change a descriptive term into a non-descriptive term.

> The word, therefore is descriptive, not indicative of the origin or ownership of the goods; and being of that quality, we cannot admit that it loses such quality and becomes arbitrary by being misspelled. *Bad orthography has not yet become so rare or so*

6

> *easily detected as to make a word the arbitrary sign*
> *of something else than its conventional meaning….*

Standard Paint Co. v. Trinidad Asphalt Mfg. Co., 220 U.S. 446, 455 (1911) (emphasis added).

Other cases have recognized that a slight misspelling does not change a merely descriptive term into a suggestive term.  See Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315 (1938) (NU-ENAMEL; NU found equivalent of "new"); In re Quik-Print Copy Shops, 616 F.2d 523, 205 USPQ 505, 507 n.9 (CCPA 1980) (QUIK-PRINT held descriptive; "There is no legally significant difference here between 'quik' and 'quick'"); Hi-Shear Corp. v. National Automotive Parts Association, 152 USPQ 341, 343 (TTAB 1966) (HI-TORQUE "is the phonetic equivalent of the words 'HIGH TORQUE'"); and In re Organik Technologies Inc., 41 USPQ2d 1690, 1694 (TTAB 1997) ("ORGANIK, which is the phonetic equivalent of the term 'organic,' is deceptive").

In the following cases specifically involving a misspelling consisting of the deletion of a space between words, the combined term remained descriptive.  See In re Gould Paper Corp., 834 F.2d 1017, 5 USPQ2d 1017 (Fed. Cir. 1987) (SCREENWIPE generic for a wipe for cleaning television and computer screens); In re Abcor Dev., supra, (GASBADGE at least descriptive for gas monitoring badges;

three judges concurred in finding that term was the name of the goods); In re Orleans Wines, Ltd., 196 USPQ 516 (TTAB 1977) (BREADSPRED descriptive for jams and jellies that would be a spread for bread); In re Perkin-Elmer Corp., 174 USPQ 57 (TTAB 1972) (LASERGAGE merely descriptive for interferometers utilizing lasers). There is nothing in the facts of this case that would lead us to conclude that the term "gasbuyer" would not, in the same manner, be seen as the equivalent of "gas buyer." Therefore, the term GASBUYER would likewise be merely descriptive of applicant's services.

While applicant notes that "[n]o such word as GASBUYER really exists in the dictionary" (Applicant's Brief at 11), the presence of a term in the dictionary is not a condition precedent for a finding that a term is merely descriptive. In re Gould Paper, supra (SCREENWIPE); In re Abcor Dev., supra (GASBADGE); In re Tower Tech, Inc., 64 USPQ2d 1314 (TTAB 2002) (SMARTTOWER merely descriptive, no dictionary definition of term).

Additionally, applicant argues that the examining attorney has improperly dissected its mark. However, applicant's mark consists of the combined words "gas" and "buyer" without a space in typed form. The examining attorney's evidence shows that the same words with a space

8

are used to describe people who buy natural gas. This evidence shows that the mark as a whole is descriptive, not just the individual parts of applicant's mark.

Applicant also argues that its "services are geared toward risk management and business-related decisions and not towards the 'gas buyers' cited in evidentiary articles. In so doing, the Examining Attorney disregards the fact that Planalytics's services are not used by 'gas buyers,' or even as a substitute for a human 'gas buyer.'" Applicant's Brief at 8.[1] Applicant also asserts that its mark "does not 'merely describe' the market research and risk management services actually provided under the mark. The GASBUYER mark has no relation to a person or entity that buys natural gas." Id. However, applicant does acknowledge that "all of the evidence provided by the Examining Attorney supports the proposition that GASBUYER may be merely descriptive of the purchasing of natural gas," going on to assert that "it is suggestive of 'risk management services in the field of pricing and purchasing natural gas.'" Applicant's Brief at 9.

---

[1] We observe that applicant attempted to submit a specimen of use prior to changing the application to one that is based on an intention to use the mark. That specimen broadly indicated that applicant's services "can be used by any company that buys or sells physical gas, gas futures, or other derivatives … including utilities, power generators, energy companies and commercial/industrial end-users of gas."

Applicant's identification of services makes it clear that its services are directed to those who are in the field of making purchasing decisions for natural gas. The evidence supports the conclusion that these people would be referred to as gas buyers. While applicant's mark does not describe every feature or characteristic of its services, there is no requirement that a mark must do this before it can be found to be merely descriptive of the services. Gyulay, 3 USPQ2d at 1009; Meehanite Metal, 120 USPQ at 294. Clearly, applicant's mark describes a feature or characteristic of the services to the extent that it immediately conveys that its services are intended for individuals who purchase natural gas.

Therefore, we agree with the examining attorney's conclusion that the mark GASBUYER is merely descriptive of applicant's identified services.

We now address the refusal to register on the ground that applicant did not comply with the examining attorney's requirement for information. In the first Office action (page 4), the examining attorney required the applicant to state whether the term GASBUYER has any significance in the trade or any relation to the services. In addition, she required applicant to "submit product information for the identified goods/services. This may take the form of a

10

fact sheet, an instruction manual, and/or advertisements."
First Office Action at 5. When applicant did not respond
to this requirement, the examining attorney made the
requirement final, along with her refusal to register the
mark on the ground of descriptiveness. In its Request for
Reconsideration (p. 14), after traversing the
descriptiveness refusal, applicant added that "information
regarding its services may be found on its web-site,
located at www.planalytics.com." The examining attorney,
in her denial of the request for reconsideration at 2,
noted that the requirement is for applicant "to provide
such information and make the information of record."

Applicant did not address the issue in its brief and
the examining attorney argues that applicant has not
complied with her requirement for information.

Trademark Rule 2.61(b), 37 CFR 2.61(b), provides that
the "examiner may require the applicant to furnish such
information and exhibits as may be reasonably necessary to
the proper examination of the application." More
specifically, the "examining attorney may request
literature, exhibits, and general information concerning
circumstances surrounding the mark and, if applicable, its
use or intended use." TMEP § 814 (3rd ed. 2003).

In interpreting this rule, the Board has noted that:

11

Trademark Rule 2.61(b) provides that the Examining Attorney may require the applicant to furnish such information and exhibits as may be reasonably necessary to the proper examination of the application. In response to a request for information such as the Examining Attorney made in this case, an applicant has several options. It may comply with the request by submitting the required advertising or promotional material. Or it may explain that it has no such material, but may submit material of its competitors for similar goods or provide information regarding the goods on which it uses or intends to use the mark. Or it may even dispute the legitimacy of the request, for example, if the goods identified in the application are such ordinary consumer items that a request for information concerning them would be considered unnecessary and burdensome.

In re SPX Corporation, 63 USPQ2d 1592, 1597 (TTAB 2002).

The examining attorney required applicant to provide fact sheets, promotional material, advertising material, and/or other product information. There is no argument that this requirement was not reasonable or legitimate. See In re Page, 51 USPQ2d 1660, 1665 (TTAB 1999) ("The Examining Attorney's additional requests for the submission of advertising or promotional materials (if available) or, in the alternative, to describe the nature and channels of trade of applicant's services, are also legitimate requests for information"). Information as to the exact nature of applicant's services and how it promotes its services is often very helpful in evaluating whether the mark describes a feature or characteristic of the identified services. See, e.g., In re Babies Beat Inc., 13 USPQ2d 1729, 1730

12

(TTAB 1990) ("In summary, *in reviewing applicant's own literature*, we find that the degree of design utility encompassed by applicant's design is so great that applicant's design is de jure functional") (emphasis added).

Therefore, the next question is whether applicant has complied with this requirement. Applicant's only response to this requirement was to refer the examining attorney to its website. Applicant's curt dismissal of the requirement for information by telling the examining attorney, in effect, "to look it up herself," is inappropriate. An applicant has an obligation to produce the information that the examining attorney requested whether it is on a website or not. This is not a technical requirement.

If an applicant has relevant information, it is incumbent on applicant to make this information of record.[2] A mere reference to a website does not make the information of record. In order to review the facts in this case, there should be evidence in the record. Also, if there should be further review, Congress has required that the "Director shall transmit to the United States Court of Appeals for the Federal Circuit a certified list of the

---

[2] If applicant does not believe it has any relevant information, it should so inform the examining attorney.

documents comprising the record in the Patent and Trademark Office." 15 U.S.C. § 1071(a)(3). See also In re Zurko, 258 F.3d 1379, 59 USPQ2d 1693, 1697 (Fed. Cir. 2001) ("[T]he Board must point to some concrete evidence in the record in support of these findings. To hold otherwise would render the process of appellate review for substantial evidence on the record a meaningless exercise") (footnote omitted).

In this case, the examining attorney has required applicant to produce fact sheets, promotional material, advertising material, and/or other product information. This information may or may not be available on applicant's website. To the extent applicant may have thought the reference to its website was a proper response, the examining attorney disabused applicant of that idea by maintaining the requirement for information. In addition, applicant did not even offer this meager information until after the examining attorney had already issued a final refusal with respect to applicant's failure to comply with the requirement for information.

Regarding website information, it is important that the party actually print out the relevant information and supply it to the examining attorney for several reasons. First, applicant, by referring the examining attorney to

14

its website, acknowledges that there is relevant information on its website.  It is applicant's responsibility to provide the information to the examining attorney.  Websites often contain voluminous information and links to other websites.  A requirement for information directs the applicant to provide information, not simply to send the examining attorney on a scavenger hunt through a website in search of relevant information.

In addition, as in this case, we simply have applicant's Internet address in the record.  Information on websites is transitory and subject to change at any time at the owner's discretion.  It is not clear what applicant intended when it directed the examining attorney to its website without providing any specific information.  If applicant intended to put the relevant portions of the website in the record, it is not clear what is in the record.  If applicant's response were to be considered sufficient, it would raise an issue as to what a reviewing tribunal is allowed to consider.  Would we be permitted to consider any information on the website regardless of when it was posted?

Finally, while we cast no aspersions on applicant's intentions in this case, we observe that applicant's response is fraught with potential for abuse.  In effect,

an applicant can deflect the examining attorney from information it has in its possession by simply referring the examining attorney to its website. An applicant controls its own website. To the extent that there is information on the website that is harmful to its claim of registrability, applicant has time to remove that information before it responds to the examining attorney's requirement for information. Second, as discussed above, websites are transitory, and it is not clear what information is on the website at any given time. Accord Babies Beat, 13 USPQ2d at 1731 (Ambiguous response offering to provide requested information if the examining attorney is "inclined to allow registration of the mark" not a proper response).

Therefore, the examining attorney's refusal to register the mark because applicant has failed to comply with her requirement for information is proper. We find that the examining attorney's requirement for information in this case was reasonably necessary for the examination of the application.[3] See Page, 51 USPQ2d at 1665 ("[W]e

---

[3] While we have affirmed the descriptiveness refusal without the benefit of this evidence, the lack of this evidence, although a hindrance, did not prevent the review of this case. Compare In re DTI Partnership LLP, 67 USPQ2d 1699, 1702 (TTAB 2003) ("[O]ur ability to fully and accurately access the substantive merits of the mere descriptiveness issue has been hindered by applicant's failure to submit information and materials;" Section 2(e)(1)

agree with the Examining Attorney that applicant's failure to respond completely to the Examining Attorney's requests for information required the Examining Attorney to proceed with an incomplete understanding of how applicant's asserted mark is or will be used, and without materials which would have allowed the Examining Attorney to conduct a more thorough and informed evaluation of the issue of mere descriptiveness").

In summary, applicant's mark GASBUYER is merely descriptive of applicant's services of providing on-line risk management services in the field of pricing and purchasing decisions for natural gas. Furthermore, applicant has failed to comply with the examining attorney's requirement for information concerning its services.

Decision:  The refusals to register are affirmed.

---

refusal dismissed as moot) with SPX Corporation 63 USPQ2d at 1597 (Refusals based on descriptiveness and failure to comply with examining attorney's requirement for information affirmed).