**Application of Calvin L. FOX.**
**Patent Appeal No. 8862.**

United States Court of Customs
and Patent Appeals.
Feb. 1, 1973.

———◆———

Amster & Rothstein, New York City, attorneys of record, for appellant. Jesse Rothstein, New York City, of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Jere W. Sears, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and WATSON, Judge, United States Customs Court, sitting by designation.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of all five claims in appellant's application, serial No. 621,-145, filed March 7, 1967, for "Process for Audio Information Distribution," We affirm.

To epitomize the description of appellant's process in his specification in non-claim language, the invention consists of making, by conventional equipment, a tape-recording of a lecture or the like,[1] transmitting this master tape to a suitable distribution point, such as a school library, making a plurality of copies of the master tape at the library for use by those wishing to hear the lecture on their own playback equipment and at their own convenience, and letting the users bring back their tape copies when they are through with them and have new lectures reproduced thereon from other master tapes at the library, which would, of course, entail erasing the record then on the tape. As to the copying equipment at the library or other distribution point, the specification states:

> The recording device is of conventional design and the structural details thereof are not necessary for an understanding of the method of the present invention. For purposes of this description it suffices to note that the recording device which is employed is capable of accommodating at least one, and preferably three, so-called slave tapes in cartridges for recording an audio program of a selected one of the master tapes and of achieving this recording at a fraction of the 30 minute play-back time of the program. This, in an obvious manner, enables wide dissemination of the audio information of the master tapes.

There is one main claim and there are four dependent claims. In claim terminology, the first recording is the "master tape," the library is the "first remote location," the copies there made are tapes in "slave cartridges,"[2] and the place where the listener plays his slave tape is "a further remote location." Claim 1 reads:

> 1. A method of transmitting audio information from an origin location to a first remote location and then, in multiple copies of such audio in-

---

1. The application states that the invention "relates generally to educational techniques."

2. What is clearly contemplated in practicing appellant's process is the use of the now ubiquitous tape "cassette," though the application does not refer to this particular species of "cartridge."

formation, to a plurality of further remote locations comprising the steps of:

(a) Recording at an origin location a plurality of programs of audio information on a plurality of individual master tapes, one for each program, and packaging said individual master tapes in individual master tape cartridges;

(b) Transmitting a plurality of said recorded programs in said master tape cartridges to a first remote location;

(c) Selectively recording at said first remote location onto at least one tape in a slave cartridge one said recorded program from a selected one of said master tape cartridges at a recording speed greater than the audio playback speed of said recorded program;

(d) Transporting said recorded slave tape cartridge from said first remote location to a further remote location;

(e) Reproducing the audio information · on said transported slave tape cartridge at said further remote location;

(f) Transporting said slave tape cartridge back from said further remote location to said first remote location; and

(g) Repeating steps (c) through (f) herein repeatedly with different programs.

The examiner cited no prior art and rejected on two grounds: under 35 U.S. C. § 101 for the reason that the invention is "a method of doing business, i. e. subject matter which does not fall within any one of the statutory classes of invention," and under 35 U.S.C. § 103 for the reason that the invention would have been obvious to those of ordinary skill in the art at the time it was made in view of practices so well known that judicial notice may be taken thereof.

The board affirmed on both grounds, first discussing the obviousness rejection. It considered each element of the main claim and the details added by the dependent claims and held:

\* \* \* we find nothing unobvious in claim 1 in view of what appellant has admitted in his specification to be old, and of material of which we can and do take judicial notice.

We find nothing in dependent claims 2 through 5 which would be unobvious in view of material as to which judicial notice may be taken.

It affirmed the § 101 rejection, though it knew of no case on the question of the patentability of a method of doing business "which is clear cut on this issue," in view of the "substantial dicta" in various cases which have discussed the question, holding that appellant's claims "do not fall within the class of a process," defined in 35 U.S.C. § 100.

## OPINION

We affirm on the ground of obviousness and will not discuss the non-statutory subject matter issue. Appellant devotes the major portion of his brief to discussion of the "method of doing business" question and when it comes to the obviousness issue he has nothing of substance to say.

Appellant asserts that the board considered only the obviousness of the individual steps of the claims and failed to consider, as it should have, appellant's process as a whole. We find no indication that this was so.

Appellant nowhere denies the matters of common knowledge on which the obviousness rejection is based but argues, first, as to step (a) of claim 1, that he "is unaware of any system wherein individual master tapes are packaged in individual master tape cartridges." The board said that would be an obvious thing to do and we agree. Appellant's unawareness of such a system, if true, is irrelevant. We find no magic in the term "master tapes." They are simply tape recordings. Cartridges have long been a well known way of packaging tapes. There is certainly nothing unobvious about transporting a plurality of

tape recordings, dealing with a variety of subjects, in their individual cartridges, from their place of origin to some other place, as called for in steps (a) and (b). Secondly, appellant argues about whether step (g) of claim 1 calls for the *erasing* of the information on a tape returned by the user and the substitution of new material in its place. Appellant contends it does and the solicitor's brief argues that it does not. We do not regard this matter as crucial to the obviousness of the process as a whole. As did the board, we will take judicial notice of the fact that tape recorders commonly erase tape automatically when new "audio information" is recorded on a tape which already has a recording on it.

We agree with the solicitor's principal contentions that appellant's claims are directed to what is essentially a tape lending library operation wherein the library makes the copies as demand warrants and that all of the equipment and technical knowledge required to perform the claimed method is admittedly old. The latter admission is to be found in part in express statements in appellant's specification and in part is deducible from the fact that it assumes anyone desiring to carry out the process would know of the equipment and techniques to be used, none being specifically described.

Appellant attempts to make much of the fact that no prior art references were cited even though he requested the examiner to do so. The examiner saw no need to do so and stuck to the position which he expressed as follows:

> The well known tape library, quite clearly, is "a first remote location" as defined in the claims, the "origin" being the studio of a recording company from which "origin" tapes have been "transmitted" to the library. The library could certainly duplicate the tape for a number of simultaneous borrowers (who would then play the duplicate tape at a "further remote location") without resorting to anything unobvious. Official notice of the existence in the art of such recording and re-recording steps has been taken and, it would appear, rightly so.

In this court appellant has not denied the existence of the facts on which the examiner rested his obviousness rejection nor the added facts of which the board took judicial notice.

Appellant having failed to show error in the obviousness rejection, the decision of the board is affirmed.

Affirmed.