# United States Court of Appeals for the Federal Circuit

---

**K/S HIMPP,**
*Appellant,*

**v.**

**HEAR-WEAR TECHNOLOGIES, LLC,**
*Appellee.*

---

2013-1549

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Reexamination No. 95/001,022.

---

Decided: May 27, 2014

---

ROBERT GREENE STERNE, Sterne, Kessler, Goldstein & Fox PLLC, of Washington, DC, argued for appellant. With him on the brief were JON E. WRIGHT and JASON EISENBERG.

SHEILA KADURA, Fulbright & Jaworski L.L.P., of Austin, Texas, argued for appellee. With her on the brief was JONATHAN S. FRANKLIN, of Washington, DC.

---

Before LOURIE, DYK, and WALLACH, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* LOURIE.

Dissenting Opinion filed by *Circuit Judge* DYK.

LOURIE, *Circuit Judge*.

K/S HIMPP ("HIMPP") appeals from the decision of the United States Patent and Trademark Office ("PTO") Board of Patent Appeals and Interferences ("Board") in an *inter partes* reexamination affirming the Central Reexamination Unit ("CRU") Examiner's decision not to reject claims 3 and 9 of U.S. Patent 7,016,512 (the "'512 patent") owned by Hear-Wear Technologies, L.L.C. ("Hear-Wear").* *See K/S HIMPP v. Hear-Wear Techs., L.L.C.*, No. 2012-004028, 2012 WL 2929630 (B.P.A.I. July 13, 2012) ("*Board Opinion*"). Because the Board did not err in holding that claims 3 and 9 would have been obvious, we affirm.

## BACKGROUND

Hear-Wear owns the '512 patent, which is directed to a hearing aid with three main parts: a behind-the-ear audio processing module, an in-the-canal module, and a connector between the modules. '512 patent col. 1 ll. 17–20.

Dependent claims 3 and 9, directed to the connector between the modules, are the only claims on appeal and read as follows:

---

* The Leahy-Smith America Invents Act amended the *inter partes* reexamination provisions. *See* Leahy-Smith America Invents Act, Pub. L. No. 112–29, § 6, 125 Stat. 284, 299–305 (2011) ("AIA"). Those amendments do not apply here because the request for *inter partes* reexamination in this case was filed before the date of enactment, September 16, 2011. *Id.* We thus express no opinion on the applicability of the AIA provisions to the current case.

3.   The at least partially in-the-canal module for a hearing aid of claim 2 wherein said insulated wiring portion is terminated by a plurality of prongs that provide a detachable mechanical and electrical connection to an audio processing module.

9.   The hearing aid of claim 8 wherein said insulated wiring portion is terminated by a plurality of prongs that provide a detachable mechanical and electrical connection to said behind-the-ear module.

*Id.* col. 23 ll. 41–45; col. 24 ll. 36–39.

During prosecution of the '512 patent, the Examiner initially rejected claims 3 and 9 because they would have been obvious. For claim 3, the Examiner found that "providing a plurality of prongs for the electrical connections or for the plugs is known in the art." J.A. 4282. Hear-Wear never challenged the Examiner's finding of "known in the art," but instead focused on the independent claims. All claims were allowed.

The PTO then granted a third party request by HIMPP for *inter partes* reexamination of the '512 patent. HIMPP argued in its request that claims 3 and 9 would have been obvious because "such detachable connections were known at the time of the alleged invention as concluded by the Examiner during prosecution." *Id.* at 138–40. HIMPP also argued that modifying Patent Cooperation Treaty Publication Number WO 99/07182 of Shennib ("Shennib"), a primary reference, to include detachable connections for a signal cable "would have been no more than the predictable use of prior art elements according to their established functions." *Id.* at 138–41. The CRU Examiner refused to adopt HIMPP's proposed rejection because HIMPP failed to provide evidence in support of that contention. The CRU Examiner ultimately main-

tained the patentability of claims 3 and 9, *inter alia*. *Id.* at 709.

After the CRU Examiner issued the Right of Appeal Notice in the *inter partes* reexamination, HIMPP filed a request for *ex parte* reexamination of claims 3 and 9. HIMPP asserted that one basis for the *ex parte* reexamination was U.S. Patent 3,123,678 of Prentiss ("Prentiss"), which HIMPP contended explicitly taught all of the features recited in claims 3 and 9. HIMPP tried to merge the *inter partes* reexamination with the *ex parte* reexamination, but the PTO declined to merge the two proceedings, noting that the *inter partes* reexamination had already advanced to the appeal stage.

Hear-Wear appealed to the Board from the *inter partes* reexamination under 35 U.S.C. §§ 134(b) and 315(a) and HIMPP cross-appealed under 35 U.S.C. §§ 134(c) and 315(b). *Board Opinion* at 2. Only HIMPP's cross-appeal of claims 3 and 9 in the *inter partes* reexamination is at issue here. The Board found that although HIMPP argued that the content of claims 3 and 9 was "well known," HIMPP failed to direct the Board "to any portion of the record for underlying factual support for the assertion." *Id.* at 24. The Board stated that it was "not persuaded that the record before [it] adequately conveys that the particular distinct connection structures set forth in those claims are disclosed." *Id.* The Board also found that during the original prosecution the Examiner never took official notice with respect to the "plurality of prongs" feature of claims 3 and 9, and that there was no further indication that Hear-Wear acquiesced to the alleged position of official notice so as to qualify the limitations of the claims as admitted prior art. *Id.* at 23–24. Thus, the Board did not agree with HIMPP that there was a suitable basis for concluding that the particular structural features of claims 3 and 9 were known prior art elements. *Id.* at 24. Accordingly, the Board affirmed the CRU

Examiner's decision not to adopt HIMPP's proposed obviousness rejections of claims 3 and 9. *Id.*

HIMPP timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

We review the Board's legal conclusions *de novo*, *In re Elsner*, 381 F.3d 1125, 1127 (Fed. Cir. 2004), and the Board's factual findings underlying those determinations for substantial evidence, *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). A finding is supported by substantial evidence if a reasonable mind might accept the evidence to support the finding. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Obviousness is a question of law, based on underlying factual findings. *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966); *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007). A claim is invalid for obviousness if, to one of ordinary skill in the pertinent art, "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made . . . ." 35 U.S.C. § 103(a) (2006); *see also KSR*, 550 U.S. at 406–07.

## I

HIMPP argues that the CRU Examiner and the Board failed to consider the knowledge of a person having ordinary skill in the art solely because HIMPP did not provide documentary evidence to prove purportedly well-known facts. HIMPP asserts that refusing to consider the knowledge of a person having ordinary skill in the art because of a lack of record evidentiary support is contrary to the Supreme Court's supposed admonishment in *KSR* against the overemphasis on the importance of published articles and the content of issued patents.

Hear-Wear responds that HIMPP's assertions of "known in the art" cannot substitute for the factual evi-

dence required to conclude that a structural element is a known prior art element. Hear-Wear argues that the Board acted within its discretion when it declined to enter new rejections against claims 3 and 9 because HIMPP failed to identify the factual evidence necessary to support its contention that the claims would have been obvious.

We agree with Hear-Wear that the Board was correct to require record evidence to support an assertion that the structural features of claims 3 and 9 of the '512 patent were known prior art elements. The patentability of claims 3 and 9 with the limitation "a plurality of prongs that provide a detachable mechanical and electrical connection" presents more than a peripheral issue. *See In re Zurko*, 258 F.3d 1379, 1386 (Fed. Cir. 2001) ("[Board] expertise may provide sufficient support for conclusions as to peripheral issues."). The determination of patentability of claims with this limitation therefore requires a core factual finding, and as such, requires more than a conclusory statement from either HIMPP or the Board. *See id.* ("With respect to core factual findings in a determination of patentability, however, the Board cannot simply reach conclusions based on its own understanding or experience . . . ."). HIMPP must instead "point to some concrete evidence in the record in support of these findings." *Id.*

The requirement that evidence on the record is necessary to support the "plurality of prongs" limitation is not inconsistent with *KSR*'s caution against the "overemphasis on the importance of published articles and the explicit content of issued patents." *KSR*, 550 U.S. at 419. In *KSR*, the Supreme Court criticized a rigid approach to determining obviousness based on the disclosures of individual prior art references that were already on the record, with little recourse to the knowledge, creativity, and common sense that an ordinarily skilled artisan would have brought to bear when considering combinations or modifications. *Id.* at 415–22. But the present

case does not present a question whether the Board declined to consider the common sense that an ordinarily skilled artisan would have brought to bear when combining or modifying references.

Instead, it is about whether the Board declined to accept a conclusory assertion from a third party about general knowledge in the art *without evidence on the record*, particularly where it is an important structural limitation that is not evidently and indisputably within the common knowledge of those skilled in the art. *Cf. Randall Mfg. v. Rea*, 733 F.3d 1355, 1362–63 (Fed. Cir. 2013) (Board's failure to consider *evidence* of the knowledge of one of skill in the art was plainly prejudicial).

Here the Board refused to adopt HIMPP's proposed rejection of claims 3 and 9 because it found that there was not a suitable basis on the record "for concluding that the particular structural features of claims 3 and 9 [were] known 'prior art' elements." *Board Opinion* at 24. The Board's decision was correct because an assessment of basic knowledge and common sense as a replacement for documentary evidence for core factual findings lacks substantial evidence support. *Zurko*, 258 F.3d at 1385–86. Accordingly, the Board's holding is not inconsistent with *KSR*'s caution against the overemphasis on publications and patents for combining or modifying prior art that are already on the record. *See, e.g.*, *Leapfrog Enter., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1161 (Fed. Cir. 2007) ("Indeed, the common sense of those skilled in the art demonstrates why some combinations would have been obvious where others would not.") (citing *KSR*, 550 U.S. at 416). In contradistinction to *KSR*, this case involves the lack of evidence of a specific claim limitation, whereas *KSR* related to the combinability of references where the claim limitations were in evidence.

The PTO examination procedure further supports Hear-Wear's position. Although a patent examiner may rely on common knowledge to support a rejection, that is appropriate only in narrow circumstances. *See* M.P.E.P. § 2144.03 ("It would <u>not</u> be appropriate for the examiner to take official notice of facts without citing a prior art reference where the facts asserted to be well known are not capable of instant and unquestionable demonstration as being well-known.") (emphasis in original). In this case, neither the Board nor the Examiner determined that the facts at issue met the standard justifying official notice. If an examiner chooses to rely on personal knowledge to support the finding of what is known in the art, and the applicant adequately traverses that assertion, then the examiner must provide an affidavit or declaration setting forth specific factual statements and explanations to support that finding. 37 C.F.R. § 1.104(d)(2); M.P.E.P. § 2144.03(c). Thus, the CRU Examiner did not err in rejecting HIMPP's contention that the structural features of claims 3 and 9 were known prior art elements because HIMPP failed to point to any evidence on the record.

We recognize that the Board has subject matter expertise, but the Board cannot accept general conclusions about what is "basic knowledge" or "common sense" as a replacement for documentary evidence for core factual findings in a determination of patentability. *Zurko*, 258 F.3d at 1385–86. To hold otherwise would be to embark down a slippery slope which would permit the examining process to deviate from the well-established and time-honored requirement that rejections be supported by evidence. It would also ultimately "render the process of appellate review for substantial evidence on the record a meaningless exercise." *Id.* at 1386 (citing *Baltimore & Ohio R.R. Co. v. Aberdeen & Rockfish R.R. Co.*, 393 U.S. 87, 91–92 (1968)). Because HIMPP failed to cite any evidence on the record to support its contention that

claims 3 and 9 were known prior art elements, we affirm the Board's decision to refuse to adopt HIMPP's obviousness contention.

## II

Alternatively, HIMPP asks that we take judicial notice: (1) that use of a multi-pronged plug to form a detachable mechanical and electrical connection at the end of an insulated wire would have been known to a person having ordinary skill in the art at the time of the invention or (2) of the Prentiss reference cited by HIMPP in the *ex parte* reexamination.

We decline to exercise our discretion to take judicial notice of any "multi-pronged plug" knowledge for the same reasons mentioned above that it was reasonable for the Board and Examiner to decline to take official notice. *See Murakami v. U.S.*, 398 F.3d 1342, 1354–55 (Fed. Cir. 2005) (application of judicial notice is discretionary).

We also decline to take judicial notice of the Prentiss reference and to expand the scope of our review beyond the grounds upon which the Board actually relied. *In re Applied Materials, Inc.*, 692 F.3d 1289, 1295 (Fed. Cir. 2012) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). The PTO's rules make clear that an *inter partes* reexamination requester may not, except in limited circumstances, submit new prior art evidence that was not cited in the reexamination request. 37 C.F.R. § 1.948 (listing exceptions not applicable here). The scope of the *inter partes* reexamination is otherwise limited to the prior art that raises a substantial new question of patentability as determined by the Director. *Belkin Int'l, Inc. v. Kappos*, 696 F.3d 1379, 1383 (Fed. Cir. 2012). Prentiss was a part of the *ex parte* reexamination, but the PTO, as was within its discretion, explicitly declined to merge the two proceedings. Since HIMPP did not cite the Prentiss reference in its request for *inter partes* reexamination and the Director did not cite the reference for the substantial

new question of patentability, we decline to consider the Prentiss reference.  *Id.*; 37 C.F.R. § 1.948.

CONCLUSION

Because HIMPP failed to cite any evidence on the record to support its contention that claims 3 and 9 of the '512 patent contained only known prior art limitations, we affirm the Board's decision to decline to adopt HIMPP's obviousness contention.

**AFFIRMED**

# United States Court of Appeals
## for the Federal Circuit

---

**K/S HIMPP,**
*Appellant,*

**v.**

**HEAR-WEAR TECHNOLOGIES, LLC,**
*Appellee.*

---

2013-1549

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Reexamination No. 95/001,022.

---

DYK, *Circuit Judge*, dissenting.

This should be an easy case, reversing the quite odd decision of the United States Patent and Trademark Office ("PTO") that it could not consider whether multi-pronged electrical connections were well known in the prior art. But the majority does not reverse. It affirms. In my view, this case raises important questions regarding the role of the PTO in making obviousness determinations.

The majority holds that patent examiners, in addressing questions of obviousness, may not rely on their expert knowledge and common sense about what is well known in the art except "in narrow circumstances" involving peripheral issues. The narrowness of this exception is

illustrated by the holding in this case. Although the claim limitation—a plurality of prongs that provide a detachable mechanical and electrical connection—was well known as of the patent's 2001 priority date, the majority holds that the examiner could not resort to the common knowledge of one skilled in the art, but rather was confined to considering only the evidence of record.

In my view, the majority's holding is inconsistent with the Supreme Court's decision in *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398 (2007), and will have substantial adverse effects on the examination process. The majority adopts a "[r]igid preventative rule[] that den[ies] factfinders recourse to common sense" even though the Court held such rules "neither necessary under our case law nor consistent with it." *Id.* at 421. Precluding examiners from using their knowledge and common sense significantly impairs their ability to review applications adequately and undermines the purpose of post-grant agency review. I respectfully dissent.

I

The claimed invention is a hearing aid with separate behind-the-ear and in-the-canal components. *See* '512 patent col. 5 ll. 4–6; *id.* col. 1 ll. 17–20. During the initial prosecution of the '512 patent, the examiner rejected all claims as obvious in view of multiple prior art references. With respect to dependent claims 3 and 9, which recite wiring portions "terminated by a plurality of prongs that provide a detachable mechanical and electrical connection," *id.* col. 23 ll. 43–44, col. 24 ll. 37–38, the examiner stated that "providing a plurality of prongs for the electrical connections or for the plugs is known in the art," and concluded it "would have been obvious to one skilled in the art to provide the prongs for the electrical connections . . . for providing [] better electrical connections." J.A. 4282. The applicant did not contest the examiner's

findings. In response to the rejection, the applicant amended the "cushion tip" element of independent claims 1 and 7 to recite "a cushion tip . . . wherein during deflection said tip portion assumes an offset angle relative to said tubular body and said speaker module." J.A. 4294. The applicant's patentability argument hinged on the novelty of the tip portion. The PTO allowed the claims based on the alleged novelty of the tip portion.

Appellant K/S HIMPP ("HIMPP") requested *inter partes* reexamination. The examiner and Board rejected all claims as obvious—except dependent claims 3 and 9— and found the claims to a hearing aid device with the recited tip portion obvious in view of multiple prior art references. HIMPP argued that claims 3 and 9 were similarly obvious. The only difference between those claims and the rejected claims was "a plurality of prongs that provide a detachable mechanical and electrical connection," and HIMPP argued that "such detachable connections were known at the time of the alleged invention as concluded by the Examiner during prosecution." J.A. 138, 140. The examiner in the *inter partes* reexamination declined to adopt the rejection on the ground that K/S HIMPP submitted "no evidence in support of requester's contention." J.A. 415. The Board affirmed the examiner, explaining that "although HIMPP asserts that the content of claims 3 and 9 is 'well known,' notably, HIMPP does not direct us to any portion of the record for underlying factual support for the assertion." J.A. 25. The Board cited no authority for the proposition that examiners cannot rely on common knowledge and common sense.

Neither the examiner nor the Board even addressed the question of whether a plurality of prongs used to make a detachable connection was well known in the art at the time of the patent's 2001 priority date. Before the examiner, before the Board, and in this court, the patentee never argued that the pronged connection was novel or

uncommon. In fact, during oral argument here, the patentee conceded that "if you think about it as just an electrical plug, it is well-known." Oral Argument Tr. 15:28–32, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/all/himpp.html. Every purchaser of electrical devices in the United States for the past 50 years or more is familiar with multipronged electrical connections. The majority here nonetheless sustains the claims based on the PTO's conclusion that there was no record evidence showing such a connection to be known in the prior art.

II

The question is whether the PTO was obligated to utilize its expert knowledge to determine whether the connection was well known in the prior art. As the Supreme Court has recognized, "the primary responsibility for sifting out unpatentable material lies in the Patent Office." *Graham v. John Deere Co.*, 383 U.S. 1, 18 (1966). The assumption that PTO examiners will use their knowledge of the art when examining patents is the foundation for the presumption in 35 U.S.C. § 282(a) that issued patents are valid. *See Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2243 (2011) (quoting *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984) (holding that § 282 codified the common law presumption of validity based on "the basic proposition that a government agency such as the [PTO] was presumed to do its job." (citing *Morgan v. Daniels*, 153 U.S. 120, 124 (1894) (the PTO is "a special tribunal, intrusted with full power in the premises")))).

Just as the PTO's expert knowledge is the foundation for the presumption of validity, in *Dickinson v. Zurko*, the Court held that the agency's expert knowledge was the foundation for the substantial evidence standard of appellate review. 527 U.S. 150, 162 (1999). That holding rested

on the recognition that "the PTO is an expert body, or that the PTO can better deal with the technically complex subject matter, and that the PTO consequently deserves deference." *Id.* at 160. The Court explained that the PTO's technical expertise was the type of "reason[] that courts and commentators have long invoked to justify deference to agency factfinding." *Id.* (citations omitted); *see also Kappos v. Hyatt*, 132 S. Ct. 1690, 1700 (2012) (recognizing that the "PTO has special expertise in evaluating patent applications").

Deference to the agency's expert knowledge is particularly important with respect to obviousness. "Throughout [the Supreme] Court's engagement with the question of obviousness, [its] cases have set forth an expansive and flexible approach . . . ." *KSR*, 550 U.S. at 415. The Court emphasized that "[r]igid preventative rules that deny factfinders recourse to common sense . . . are neither necessary under our case law nor consistent with it." *Id.* at 421. The Court specifically rejected the approach that the majority adopts here, stating that "[t]he obviousness analysis cannot be confined by . . . overemphasis on the importance of published articles and the explicit content of issued patents." *Id.* at 419. Publications and patents are not sufficient by themselves because "[i]n many fields it may be that there is little discussion of obvious techniques or combinations." *Id.*

## III

The majority's narrow approach to obviousness here relies primarily on our court's decision, *In re Zurko*, 258 F.3d 1379, 1386 (Fed. Cir. 2001), which predates the Supreme Court's decision in *KSR*. In *Zurko*, we held that, as to core (as opposed to peripheral) issues, "the Board cannot simply reach conclusions based on its own understanding or experience—or on its assessment of what would be basic knowledge or common sense." *Id.* That

statement is contrary to the Court's holding in *KSR* that "*[o]ften[]* it will be necessary for a court to look to . . . the background knowledge possessed by a person having ordinary skill in the art" when examining obviousness, 550 U.S. at 418 (emphasis added), and that "[r]igid preventative rules that deny factfinders recourse to common sense . . . are neither necessary under our case law nor consistent with it." *Id.* at 421.[1] The majority's approach here is inconsistent with *KSR* itself and also with our post-*KSR* approach. Following *KSR*, we recognized that the Court "expanded the sources of information for a properly flexible obviousness inquiry to include . . . the background knowledge, creativity, and common sense of the person of ordinary skill." *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1329 (Fed. Cir. 2009). Consequently, obviousness inquiries "include recourse to logic, judgment, and common sense available to the person of ordinary skill that do not necessarily require explication in any reference." *Id.*

The majority's approach is also contrary to case law of our predecessor court, which, prior to *Zurko*, repeatedly held that an examiner could rely on verifiable facts within his knowledge to reject claims. The court expressly held that the Board "may take notice of facts beyond the record which, while not generally notorious, are capable of such instant and unquestionable demonstration as to defy dispute." *In re Ahlert*, 424 F.2d 1088, 1091 (CCPA 1970) (citing *In re Knapp Monarch Co.*, 296 F.2d 230 (CCPA 1961)). The court explained that, in the context of patent examination, judicial notice principles are "designed with the purpose in mind of fully utilizing the independent and specialized technical expertise of the Patent Office exam-

---

[1]    To the extent that the MPEP § 2144.03 reiterates the holding of *Zurko*, it is also inconsistent with *KSR*.

iners while balancing the applicant's rights to fair notice and an opportunity to be heard." *Id.* at 1092.

Under that approach, the court repeatedly affirmed rejections based on the examiner's knowledge that a limitation was well known in the art. *See, e.g.*, *In re Fox*, 471 F.2d 1405, 1407 (CCPA 1973) (affirming rejection where examiner took "[o]fficial notice of the existence in the art of such recording and re-recording steps" for copying the contents of one audio tape onto another); *In re Larson*, 340 F.2d 965, 968 (CCPA 1965) (affirming rejection because "the use of a one piece construction instead of the structure disclosed in [the prior art] would be merely a matter of obvious engineering choice"); *In re Soli*, 317 F.2d 941, 946 (CCPA 1963) (examiner stating that "a control is standard procedure throughout the entire field of bacteriology" did not have to cite supporting prior art); *In re Dulberg*, 289 F.2d 522, 524 (CCPA 1961) (upholding rejection of claims where prior art did not disclose limitation of lipstick holder but it was "obvious and common to remove obstructions from the interior of tubular articles by pushing them out by means of an inserted member"); *In re Stevens*, 212 F.2d 197, 198–99 (CCPA 1954) (adjustable fishing rod handle was not patentable as substitution was obvious over prior art).

The majority's concerns about potential unfairness in relying on the examiner's specialized knowledge are not well taken in view of recognized safeguards. First, to ensure meaningful challenge and review, we have held that examiners must state on the record that they are relying on a fact well known in the art and provide their rationale for doing so. In *Perfect Web*, we explained that "to invoke 'common sense' or any other basis for extrapolating from prior art to a conclusion of obviousness, a district court must articulate its reasoning with sufficient clarity for review." 587 F.3d at 1330; *see also TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1342 (Fed. Cir. 2010)

("Although reliance on common sense does not require a specific evidentiary basis . . . a district court must articulate its reasoning with sufficient clarity for review.") (internal quotation marks omitted).

Second, we have held that applicants must have the opportunity to challenge the examiner's determination that particular features were common knowledge in the art. *See Ahlert*, 434 F.2d at 1091 (requiring that applicants be given "the opportunity to challenge the correctness of the assertion or the notoriety or repute of the cited reference"); MPEP § 706 ("The goal of examination is to clearly articulate any rejection early in the prosecution process so that the applicant has the opportunity to provide evidence of patentability and otherwise reply completely at the earliest opportunity."); MPEP § 2144.04(C) ("To adequately traverse such a finding, an applicant must specifically point out the supposed errors in the examiner's action, which would include stating why the noticed fact is not considered to be common knowledge or well-known in the art." (citing 37 C.F.R. § 1.111(b))).

I respectfully dissent from the majority's affirmance of the Board. I would reverse the Board's decision and remand for proceedings consistent with the Supreme Court's decision in *KSR*.